UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INNOVAPPTIVE, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. _____ |
| INNOVAPTE CORPORATION, | § § § | **JURY DEMANDED** |
| Defendant. | § § § | |

# COMPLAINT

This is a complaint for trademark infringement and related claims. Plaintiff Innovapptive, Inc. sells workforce management software under the brand name and mark INNOVAPPTIVE. It owns U.S. trademark registration Nos. 7,400,254 and 7,401,698. Defendant Innovapte Corporation has recently begun using the confusingly similar mark INNOVAPTE to sell directly competitive software. Innovapte's unauthorized use of this infringing mark will cause confusion, damage Innovapptive's reputation, and harm consumers.

## NATURE OF ACTION & JURISDICTION

1. This is an action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.,* and for trademark infringement, unfair competition, and unjust enrichment under Texas common law.

2. This Court has subject-matter jurisdiction under the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. It has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

1

3. Venue is proper in this District because Innovapte is not a United States resident and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

## PARTIES

4. Plaintiff Innovapptive Inc. is a corporation organized under the laws of the state of Delaware with a principal place of business at 24 Greenway Plaza, Suite 1501, Houston, Texas 77046.

5. On information and belief, Defendant Innovapte Corporation is a Canadian corporation with a principal place of business at 4145 North Service Road, 2nd Floor, Burlington, Ontario L7L 6A3, Canada.

## FACTS

### A. Innovapptive and Its Trademarks

6. Innovapptive is a global leader in connected frontline worker applications. It sells its worker software and Systems Applications and Products (SAP) integration solutions to customers throughout the United States and the world.

7. For example, Innovapptive sells enterprise asset-management software.

8. Innovapptive sells inventory-management software.

9. Innovapptive sells software for capturing, tracking, and reporting assets, found on the SAP store (e.g., https://store.sap.com/dcp/en/product/display-2001010457_live_v1/massettag-fixed-assets-tracking-and-tagging).

10. Innovapptive sells consulting services for businesses using SAP software.

11. Innovapptive sells software in the SAP Store, among other sales channels.

12. Innovapptive has used its INNOVAPPTIVE mark in commerce since at least as early as 2012. Innovapptive also uses and has used design and logo marks containing the word INNOVAPPTIVE.

13. Over the past decade, Innovapptive's marks have become widely recognized in the relevant segment of the software industry. Innovapptive sells its software to dozens of major customers, and Innovapptive's software is used by many thousands of people each day.

14. Innovapptive's successful product and marketing efforts have created a brand that now generates over fifteen million dollars in revenue a year.

15. As a result of Innovapptive's extensive use of its INNOVAPPTIVE marks in commerce, Innovapptive has developed considerable goodwill, public recognition, and firmly established trademark rights.

16. In addition to its extensive and enforceable common law trademark rights, Innovapptive also owns federal registration Nos. 7,400,254 and No. 7,401,698 for its marks with the United States Patent and Trademark Office ("USPTO"). The first registration covers INNOVAPPTIVE in standard character form, and the second covers the current Innovapptive logo, shown below:



The registrations cover, among other things, software and downloadable mobile application software for asset management and inventory management.

17. **Exhibit 1** contains copies of the USPTO registration certificates for the two INNOVAPPTIVE registrations just discussed. Both registrations are valid and subsisting.

B. **Innovapte's Unlawful Conduct**

18. On information and belief, Innovapte adopted the confusingly similar name and mark INNOVAPTE on or about April 2022. This was more than ten years after Innovapptive first began using its INNOVAPPTIVE mark in commerce.

19. On information and belief, Innovapte was previously named "Shefaria Enterprises, Inc." from 2006 until approximately April 2022. On or around that time, Innovapte changed its corporate name to "Innovaptive Corporation," which is strikingly similar to Innovapptive's name.

20. On information and belief, since around the same time it changed its corporate name to "Innovaptive Corporation," Innovapte also began using the infringing mark INNOVAPTE.

21. On information and belief, in or around May 2024, Innovapte again changed its corporate name, this time to "Innovapte Corporation." Innovapte made this change to its corporate name after receiving two cease-and-desist letters from Innovapptive, discussed further below.

22. Innovapte uses its infringing INNOVAPTE mark to sell the same types of software that Innovapptive sells under its authentic INNOVAPPTIVE trademark.

4

23. For example, Innovapte sells enterprise asset-management software.

24. Innovapte sells inventory-management software.

25. Innovapte sells software for capturing, tracking, and reporting assets, on the SAP store (e.g., https://store.sap.com/dcp/en/product/display-2001012165_live_v1/innovtrack).

26. Innovapte sells consulting services for businesses using SAP software.

27. Innovapte sells software in the SAP Store, among other trade channels.

28. On information and belief, Innovapte offers consulting services to assist businesses in navigating their use of SAP software and systems.

29. Innovapptive and Innovapte are direct competitors in the SAP software and consulting industry.

30. Innovapptive sells software in the SAP Store in the Enterprise Resource Planning category, as shown below:



31. Meanwhile, Innovapte sells software in the SAP Store in the Enterprise Resource Planning category, as shown below:



32. The likelihood of confusion extends beyond just the SAP Store. Both parties offer their goods and services on their own websites, with Innovapptive using the mark INNOVAPPTIVE and Innovapte using the confusingly similar mark INNOVAPTE. Consumers who buy directly from the parties are likely to experience confusion, as are consumers who buy from the SAP Store.

33. Innovapte's infringing INNOVAPTE Mark poses a significant likelihood of consumer confusion, especially because the parties directly compete with one another in the business-software market, enterprise resource-management market, supply-chain planning market, asset-management market, and consulting market.

34. Innovapte's actions risk confusing consumers into believing that Innovapte's goods and services come from Innovapptive, are licensed or approved by Innovapptive, or are otherwise affiliated with Innovapptive. This confusion threatens Innovapptive's hard-earned goodwill in its INNOVAPPTIVE marks.

35. Innovapptive sent Innovapte a cease-and-desist letter on February 9, 2024. The letter alerted Innovapte of the concerns regarding its use of an infringing mark. Innovapte tweaked its corporate name from "Innovaptive Corporation" to

"Innovapte Corporation" following continued exchanges with Innovapptive, but Innovapte did not cease—and to date has not ceased—its use of the infringing marks.

36. Innovapte responded to Innovapptive's letter on March 18, 2024. Innovapte denied any infringement and refused to stop its conduct.

37. Because of Innovapte's refusal to respect Innovapptive's trademark rights, Innovapptive was forced to send two additional cease-and-desist letters on April 2, 2024, and June 14, 2024, respectively. Innovapte did not respond to either of these two letters.

38. **Exhibit 2** contains accurate copies of the four pre-lawsuit letters just discussed.

39. In the parties' pre-suit correspondence, Innovapte has contradicted itself about the confusion between the parties' marks.

40. Innovapte at first purported to deny any confusion, writing in its March 18 response letter that it was "adamant that there is no likelihood of confusion."

41. But later, in a series of LinkedIn messages to Innovapptive from Innovapte's director Yogi Kalra sent in October 2024, Innovapte appeared to not only implicitly admit the likelihood of confusion but also suggested—incredibly—that the parties take advantage of that confusion: "If you still believe [the INNOVAPTE mark] causes confusion, we should use that to our advantage." An accurate screenshot of this LinkedIn message is attached as **Exhibit 3**.

42. In the LinkedIn message to Innovapptive, Innovapte's director Kalra purported to offer a "partnership" agreement that would allow Innovapte to

7

purposefully weaponize consumer confusion and trade off of Innovapptive's hard-earned goodwill and trademark recognition.

43. Kalra's LinkedIn message appears to summarily dismiss Innovapptive's infringement claims while simultaneously admitting that the parties' marks are confusingly similar: "Should anyone reach out to either party, for any of the others' product, we can present ourselves to them as a partner company and pass on the inquiry with (or without) referral or compensation/revenue share to the other."

44. In the same LinkedIn message, Innovapte's director Kalra also appeared to admit that Innovapte did not run a reasonable search before adopting the corporate name "Innovaptive Corporation" and the confusingly similar mark INNOVAPTE: "Had Innovapptive come up in our name search some years ago, we would have avoided it in the first place."

C. **Effect of Innovapte's Unlawful Conduct**

45. Innovapte's unauthorized use of the infringing INNOVAPTE mark is likely to cause confusion, to cause mistake, and to deceive. Consumers and potential consumers are likely to believe that the parties are either the same company or affiliated in some way, when in fact they are not.

46. The likelihood of confusion is particularly acute because the parties' goods and services are closely related and, in some respects, identical.

47. The likelihood of confusion is also particularly high because Innovapte's offerings travel in similar trade channels for purchase by the same or similar

consumers as Innovapptive's—as exemplified by both parties listing their offerings on the SAP Store and more broadly in the business-to-business software marketplace.

48. Innovapte's unauthorized use of the INNOVAPTE mark allows it to trade on Innovapptive's reputation and receive the benefit of the Innovapptive's hard-earned goodwill. Innovapptive promotes its brand to ensure that customers associate the INNOVAPPTIVE trademark exclusively with Innovapptive and its premium software, services, and SAP integration solutions. Innovapte's confusingly similar mark threatens to impact Innovapptive's reputation without Innovapptive having any quality control or supervision over Innovapte's operations.

49. Innovapte's continued use of the INNOVAPTE mark after receiving Innovapptive's letter in February 2024 and its two follow-up demand letters—despite Innovapte's having no credible defense—underscores the willfulness and bad faith of Innovapte's conduct.

50. The admissions and contradictory positions taken by Innovapte's director in his LinkedIn messages to Innovapptive further underscore the willfulness of Innovapte's infringement.

51. Innovapte's use of the infringing INNOVAPTE mark unjustly enriches Innovapte at Innovapptive's expense. Innovapte has been and continues to be unjustly enriched by taking undue advantage of Innovapptive and its accumulated goodwill in its INNOVAPPTIVE Marks.

52. Unless this Court restrains this conduct, Innovapte will continue to cause irreparable injury to Innovapptive and to the public for which there is no adequate remedy at law.

### COUNT I: FEDERAL INFRINGEMENT OF REGISTERED MARKS
### (15 U.S.C. §§ 1114(1))

53. Innovapptive repeats the allegations above as if fully set forth herein.

54. Innovapptive owns federally registered rights for its INNOVAPPTIVE Marks.

55. Innovapptive has priority through its senior, longstanding, and continuous use of the INNOVAPPTIVE marks.

56. Innovapte's INNOVAPTE marks are likely to cause confusion, to cause mistake, or to deceive.

57. Innovapte's unauthorized use of the INNOVAPTE marks infringes Innovapptive's registered trademark rights in violation of 15 U.S.C. § 1114(1).

### COUNT II: FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

58. Innovapptive repeats the allegations above as if fully set forth herein.

59. Innovapptive owns enforceable federal rights in its INNOVAPPTIVE Marks, including both registered and unregistered rights.

60. Innovapptive has priority through its senior, longstanding, and continuous use of the INNOVAPPTIVE marks.

61. Innovapte's INNOVAPTE marks are likely to cause confusion, to cause mistake, or to deceive.

62. Innovapte's unauthorized use of the INNOVAPTE marks constitutes unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

### COUNT III: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

63. Innovapptive repeats the allegations above as if fully set forth herein.

64. Innovapptive owns enforceable Texas state common law rights in its INNOVAPPTIVE Marks.

65. Innovapptive has priority through its senior, longstanding, and continuous use in Texas of the INNOVAPPTIVE marks.

66. Innovapte's INNOVAPTE marks are likely to cause confusion, to cause mistake, or to deceive.

67. Innovapte's unauthorized use of the INNOVAPTE marks constitutes trademark infringement and unfair competition in violation of Texas common law.

### COUNT IV: UNJUST ENRICHMENT

68. Innovapptive repeats the allegations above as if fully set forth herein.

69. Innovapte's actions allow it to unjustly obtain benefits to which it is not entitled at the expense of Innovapptive.

70. Innovapte's actions constitute unjust enrichment under Texas common law.

### PRAYER

Plaintiff Innovapptive Inc. prays that:

a. Innovapte—including its affiliated companies, subsidiaries, corporate entities, agents, servants, employees, attorneys, and all other persons in active

concert or participation with them—be enjoined from all use of INNOVAPPTIVE, INNOVAPTE, and any other mark or design that is confusingly similar to any of the INNOVAPPTIVE marks, including all use of the infringing marks on Innovapte's products and services.

  b. Innovapte—including its affiliated companies, subsidiaries, corporate entities, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them—be required to deliver up and destroy any and all products, packaging, signage, advertisements, internet postings and advertisements for those products, and any other materials bearing or using INNOVAPPTIVE, INNOVAPTE, and any other mark or design that is confusingly similar to any of the INNOVAPPTIVE Marks;

  c. Innovapte be ordered to file with this Court and to serve on Innovapptive, within 30 days after the entry and service on Innovapte of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Innovapte has complied with the injunction;

  d. Innovapptive be awarded all monetary remedies to which it is entitled, including but not limited to actual damages (trebled) and all profits realized by Innovapte (adjusted upward as the Court deems just) under 15 U.S.C. § 1117(a) and (b) and Texas law;

  e. Innovapptive be awarded its reasonable attorney's fees under 15 U.S.C. § 1117(a) and under Texas law;

  f. Innovapptive be awarded the costs of this action;

g.  Innovapptive be awarded prejudgment and postjudgment interest; and

h.  Innovapptive be awarded any other relief as the Court may deem appropriate.

## JURY DEMAND

Innovapptive demands a jury trial on all issues triable by jury in accordance with Federal Rule of Civil Procedure 38(b).

DATED: January 23, 2025                    Respectfully submitted,

/s/ *Travis R. Wimberly*
Travis R. Wimberly
*Attorney-in-Charge
State Bar No. 24075292
S.D. Tex. Bar No. 1804532
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, Texas 78702
(512) 322-5200
(512) 322-5201 (fax)
twimberly@pirkeybarber.com

*Of Counsel:*

Taylor Luke
State Bar No. 24136989
S.D. Tex. Bar No. 3902466
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, Texas 78702
(512) 322-5200
(512) 322-5201 (fax)
tluke@pirkeybarber.com

*Counsel for Plaintiff*