United States District Court
Southern District of Texas

**ENTERED**

June 26, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| INNOVAPPTIVE, INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-00280 |
| | § | |
| INNOVAPTE CORPORATION, | § | |
| | § | |
| **Defendant.** | § | |

**<u>MEMORANDUM & ORDER</u>**

Before the Court is Defendant Innovapte's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 16). For the reasons below, the Court now **GRANTS** the Motion and **DISMISSES** this case without prejudice for lack of personal jurisdiction.

## I.     BACKGROUND

Plaintiff Innovaptive is a technology company that sells workforce management software under the brand name mark INNOAPTIVE. It owns two U.S. trademark registration numbers related to this brand name. Plaintiff is a corporation incorporated in Delaware with its principal place of business in Houston, Texas. Defendant Innovapte is a Canadian corporation headquartered in Ontario, Canada. Plaintiff has sued Defendant for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and for trademark infringement, unfair competition, and unjust enrichment under Texas common law. ECF No. 1 at ¶ 1. The parties sell similar software products and both advertise products on the "SAP Store." *Id*. at ¶ 25-31. Plaintiff argues that Defendant's use of the brand name "Innovapte," in the SAP store and elsewhere, is likely to cause confusion. *Id*. at ¶ 32-42.

Defendant has a U.S. affiliate, Innovapte USA, with which it shares a website and CEO. ECF No. 16 ("Motion"), Ex. 1 ("Kalra Declaration") at ¶ 4. It lists various U.S.-related links on its website and social media (such as a U.S. phone number and address). ECF No. 17, Ex. A ("Wimberly Declaration"). However, neither Defendant, Innovapte Canada, nor its U.S. affiliate, Innovapte USA, have actually sold any software products or other services in the United States using the allegedly infringing mark. Kalra Declaration at ¶ 10. Because it has no business in the United States, Innovapte USA has no revenue or profit. *Id*. at ¶ 11.

Defendant has moved to dismiss for lack of personal jurisdiction. Plaintiff argues that jurisdiction is proper through Defendant's contacts with the United States as a whole under Federal Rule of Civil Procedure 4(k)(2).

## II.     LEGAL STANDARDS

"[T]o establish personal jurisdiction under Rule 4(k)(2), three essential elements must be present: (1) the action must be pending in federal court based on a claim arising under federal law. . . ; (2) the defendant must not be subject to personal jurisdiction in any state; and (3) the defendant must have sufficient contacts with the United States as a whole such that the exercise of jurisdiction does not violate Fifth Amendment due process." § 4:82 Expanded jurisdiction under Rule 4(k)(2), 1 Federal Rules of Civil Procedure, Rules and Commentary § 4:82. "[S]o long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004).

Here, it is undisputed that the Court lacks general personal jurisdiction over Defendant. "[S]pecific jurisdiction over a nonresident corporation is appropriate when the corporation has purposefully directed its activities at the forum state and the litigation results from alleged injuries

2 / 10

that arise out of or relate to those activities." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (internal citations omitted). The defendant's contacts with the United States "must be [its] own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home—by, for example, exploi[ting] a market in the forum State or entering a contractual relationship centered there." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Finally, the plaintiff must show that "exercising our jurisdiction [would] be 'fair and reasonable' to the defendant." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317–18 (5th Cir. 2021) (citation omitted).

When assessing whether personal jurisdiction exists for the purposes of a motion to dismiss, the court may rely on "pleadings, depositions, affidavits and exhibits of record." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999). The court "must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

## III.    ANALYSIS

The parties do not dispute that the action in this case arises under federal law or that the defendant is not subject to personal jurisdiction in any U.S. state. Therefore, the only question is whether Defendant has sufficient contacts with the United States as a whole such that the exercise of personal jurisdiction does not violate due process.

Plaintiff argues that the following contacts with the United States support the Court's exercise of personal jurisdiction over Defendant:

- Defendant's website and LinkedIn page lists a physical U.S. office location in Delaware;

- Defendant's website lists both Canada and "USA" next to its "book consultation" link, inviting U.S. users to book consultations and includes a specific USA phone number;
- Defendant made a Fourth of July post on LinkedIn, displaying a large American flag and the hashtag "#USA";
- Defendant uses U.S.-based social media platforms (LinkedIn, Twitter/X) and a U.S.-based webhost and domain registrar (GoDaddy);
- Defendant's website displays two U.S.-based companies (the NBA and Chevron-Phillips Chemical) under the header "join thousands of companies that rely on SAP to power their business";
- Defendant recently attended and was a "sponsor" of a U.S. tradeshow in Louisiana, which it advertised on LinkedIn;
- A LinkedIn search reveals one (anonymous) employee of Defendant whose location is listed as USA (though Defendant claims to have no U.S. based employees).

*See generally* ECF No. 17 ("Response"); Wimberly Declaration.

Defendant makes two primary arguments against jurisdiction. First, it claims that the contacts listed by Plaintiff are insufficient to confer jurisdiction because Defendant has "no U.S. sales, no U.S. customers, and no use of the accused mark in the United States." ECF No. 18 ("Reply") at 2. Second, Defendant argues that it's U.S. address and phone number are attributable to "Innovapte USA," a subsidiary of Defendant (Innovapte Canada) which was "created for a contemplated expansion [into the U.S. market] that never occurred." *Id*. Defendant argues that its U.S. subsidiary's contacts should not be attributed to Innovapte Canada, and that in any case, Innovapte USA has not successfully conducted any business in the United States and its U.S. address is merely that of a registered agent.

Defendant relies on *Quick Technologies, Inc. v. Sage Grp. PLC*, 313 F.3d 338 (5th Cir. 2002), which also dealt with personal jurisdiction over a foreign corporation under Rule 4(k)(2) in a trademark infringement suit. In *Quick Technologies*, the Fifth Circuit summarized the Defendant's purported contacts with the U.S. as follows:

(1) [Defendant] filed an opposition to [plaintiff's] trademark application with the USPTO in which it asserted its use of the SAGE mark in commerce in the United States, including in its U.S. marketing efforts; (2) [defendant] retained a U.S. attorney to file the opposition and to negotiate with [plaintiff]; (3) [defendant] filed an intent-to-use application with the USPTO; (4) [defendant] contacted U.S. companies concerning its international re-branding efforts, including one trip to the U.S. by its Business Development Director; (5) [defendant] operated a web site, www.sage.com, which provided information about [defendant], as well as links to its U.S. subsidiaries; and (6) [defendant] used the SAGE mark in publications circulated in the U.S. and added the SAGE mark to 'product advertisements, boxes and brochures' used by its U.S. subsidiaries.

*Quick Techs., Inc.*, 313 F.3d at 344.

The Fifth Circuit held that these contacts were insufficient to support the exercise of personal jurisdiction over the defendant.

First, the court noted that "[plaintiff's] claims do not sufficiently 'arise out of or relate to' the contacts indicated by the documents filed with the USPTO to establish specific jurisdiction." *Id*. at 345. The Fifth Circuit found that these documents "merely indicate that [defendant] owned various registrations of the mark SAGE in the United Kingdom, it *had the intention of using the mark in commerce in the United States*, and [that] its subsidiaries were currently using the mark in the United States." *Id*. (emphasis added). As to the defendant's use of the allegedly infringing mark in publications and advertisements circulated in the United States, the Fifth Circuit noted that "[g]enerally, advertisements are insufficient to establish personal jurisdiction." *Id*. The court cited *Singletary v. B.R.X., Inc.*, which concluded that advertisements did not establish personal jurisdiction where there was no evidence that the "claim arose out of or was related to" the advertisements." 828 F.2d 1135, 1136–37 (5th Cir.1987).

Second, the Fifth Circuit found that "[defendant's] operation of a website containing company and product information and links to its U.S. subsidiaries also does not provide sufficient

grounds for the exercise of personal jurisdiction" because "a website that is nothing more than a 'passive advertisement,' i.e. a website that provides product information, toll-free telephone numbers, e-mail addresses, mail addresses, and mail-in order forms, does not support the exercise of personal jurisdiction." *Id*. (internal citations omitted).

Finally, the Fifth Circuit stated that "[defendant's] various contacts with U.S. companies, including those related to its re-branding efforts with its U.S. subsidiaries, also do not involve [defendant] using [plaintiff's] mark in commerce in the U.S., [and] thus. . . do not form a sufficient basis for specific personal jurisdiction." *Id*.

The Court agrees with Defendant that *Quick Technologies* precludes the exercise of personal jurisdiction in this case. Defendant's U.S.-targeted website and social media posts cannot establish personal jurisdiction because under *Quick Technologies*, Plaintiff's trademark infringement claim does not "arise out of" these contacts. The *Quick Technologies* Court declined to exercise personal jurisdiction despite the fact that the defendant in that case "had the intention of using the mark in commerce in the United States, and its subsidiaries were currently using the mark in the United States." *Id*. Here, even Defendant's U.S. subsidiary has conducted no actual business using the mark in the United States. The fact that Defendant is interested in doing business in the United States in the future and its attempts to expand into the United States are therefore insufficient to confer personal jurisdiction so long as Defendant does not actually conduct business in the United States.

Plaintiff argues that *Quick Technologies* is distinguishable because Defendant in this case has attended at least one U.S. trade show and lists a U.S. office address on its website, contacts

that were not present in *Quick Technologies*. But the Court does not find these differences meaningful.[1]

On trade show attendance, the Court agrees with Defendant that mere attendance at a trade show, the location of which Defendant had no control over, is insufficient to support the exercise of jurisdiction. *See C5 Med. Werks, LLC v. CeramTec GmbH*, 937 F.3d 1319, 1323–24 (10th Cir. 2019) (holding that a defendant's attendance at trade shows in the forum state was "not the 'purposeful availment' required for a finding of specific jurisdiction" where the defendant "did not choose where the tradeshows were held") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

The fact that Defendant's website lists a U.S. address similarly does not overcome the fact that Defendant has not used the infringing mark to conduct any business in the United States. Additionally, this U.S. address belongs to Defendant's U.S. subsidiary, Innovapte USA. Although Plaintiff argues that "neither Innovapte's motion nor its real-world activities. . . make any distinction between Innovapte's activities and those of its supposed U.S. affiliate," Plaintiff clarified at the hearing on the Motion to Dismiss that it does not seek to "pierce the veil" between Innovapte and Innovapte USA. Response at 21. This renders dubious any arguments based on the actions of Innovapte USA. In *Quick Technologies*, the plaintiff similarly "[wa]s not seeking to have the activities of [defendant's] U.S. subsidiaries imputed to [defendant] for purposes of establishing jurisdiction under an alter ego theory." 313 F.3d at 345 n. 4. Even if the Court were to attribute Innoptive USA's contacts to Defendant, it is not clear that these contacts are sufficient

---

[1] The fact that an anonymous employee of Defendant's is listed as located in the United States on LinkedIn is also insufficient to confer specific jurisdiction because Plaintiff's trademark infringement claim does not "arise out" of this contact.

7 / 10

to establish personal jurisdiction. Defendant "does not deny that it wanted to enter the U.S. market through its affiliate, [but] . . . this expansion has not occurred, and neither [Defendant] nor Innovapte USA saw any business in the United States." Reply at 5. In short, because none of Defendant's contacts with the United States have resulted in Defendant making any sales or conducting any business in the United States out of which a trademark infringement claim could arise, the Court lacks personal jurisdiction over Defendant.[2]

Plaintiff's other attempts to avoid *Quick Technologies* are similarly unsuccessful. First, Plaintiff notes that here, unlike in *Quick Technologies*, "Innovapptive's trademark claims arise directly and inextricably from Innovapte's own U.S. contacts—e.g., its advertising in the United States to U.S. customers, at U.S. trade shows, on U.S. social media platforms; its holding out a physical U.S. presence; and all the other U.S. contacts shown in the attached evidence, all of which are done under the infringing INNOVAPTE mark owned and controlled by Innovapte." Response at 21. But merely stating that Plaintiff's infringement claims arise out of Defendant's U.S. contacts does not make it so. If the trademark infringement claim in *Quick Technologies* did not arise out of the defendant's use of the infringing mark on its website, in U.S.-targeted advertising, and by U.S. subsidiaries, the same is true in this case.

Plaintiff also cites several district court cases and a recent, unreported Fifth Circuit opinion in which courts found jurisdiction over non-U.S. corporations under Rule 4(k)(2). But importantly, none of these cases involved trademark infringement claims. The most comparable case cited by

---

[2] While Defendant's website displays two U.S.-based companies who "rely on SAP to power their business," "SAP" is a general term for the software products sold by both Defendant and Plaintiff (and many other companies), not a product unique to Defendant. This statement does not indicate (and Plaintiff does not argue that it indicates) that the displayed companies actually do business with Defendant. The display on Defendant's website is therefore merely a passive advertisement (though perhaps a misleading one), rather than an indication of business within the United States.

8 / 10

Plaintiff is *Prep Solutions Ltd. v. Techono Ltd.*, in which the court found jurisdiction over a foreign defendant test preparation company based on the defendant's promotion of its materials on a U.S.-website and social mediate accounts. 731 F. Supp. 3d 752, 760-61 (E.D. Tex. 2024). But this case involved copyright rather than trademark infringement, and it was undisputed that the defendant allowed U.S. users to access copyrighted material via its website. *Id*. at 760. The copyright context is distinct from the trademark context in that a copyright infringement claim requires only the unauthorized copying of the original work, whereas a trademark infringement claim requires *use* of the infringing mark in commerce. Because Defendant in this case has not conducted any sales using the infringing mark in the United States, a trademark infringement claim cannot arise out of its website advertisements. *DISH Network, L.L.C. v. Elahmad* similarly involved copyright infringement claims, and it was similarly undisputed that the defendant "made DISH's copyrighted works accessible in the United States." 2024 WL 1008585 at *4. The other cases cited by Plaintiff are in the patent context, meaning that the courts applied Federal Circuit rather than Fifth Circuit law, in addition to factual and legal differences. *See CLO Virtual Fashion Inc. v. Zhejiang Lingdi Digital Tech. Co.*, 2024 WL 4710810 (E.D. Tex. Aug. 28, 2024) and *Teso LT, UAB v. Luminati Networks Ltd.*, WL 7364606 (E.D. Tex. Dec. 15, 2020).

Ultimately, the Court understands Plaintiff as arguing that *Quick Technologies* was wrongly decided and that the Fifth Circuit might reach a different conclusion today. But while *Quick Technologies* does require a somewhat counterintuitive result—that the U.S. courts lack personal jurisdiction over a defendant corporation despite the company's undisputed but unsuccessful efforts to enter the U.S. market—this Court remains bound by that decision. It is undisputed that none of Defendant's contacts with the United States have involved the actual conducting of business or making of sales in the United States. Under these circumstances,

Plaintiff cannot show that Defendant "purposefully directed its activities at the [United States] [and that] the litigation result[ed] from alleged injuries that arise out of or relate to those activities." *Quick Techs., Inc.*, 313 F.3d at 344 (internal citations omitted). The Court therefore lacks personal jurisdiction over Defendant.

## IV.    CONCLUSION

For these reasons, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Signed at Houston, Texas on June 26, 2026.

Keith P. Ellison
United States District Judge